IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JUAN LAMAS AGUILAR,

      Petitioner,

  v.                                                                                  Case No. 1:25-cv-00996-KWR-KK

PAMELA BONDI, *in her official capacity as*
*Attorney General of the United States*,
KRISTI NOEM, *in her official capacity as Secretary*
*of the Department of Homeland Security*,
UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
TODD LYONS, *in his official capacity as Acting Director of*
*U.S. Immigration and Customs Enforcement*,
MARY DE ANDA-YBARRA, *Field Office Director*,
JAMIE RAYE CARNES, *Warden of Torrance County Detention Center*,

      Respondents.

## MEMORANDUM OPINION AND ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS AND DENYING RESPONDENTS' MOTION TO DISMISS

**THIS MATTER** comes before the Court on Petitioner's Writ of Habeas Corpus (**Doc. 1**) and Respondents' Motion to Dismiss (**Doc. 11**). Having reviewed the Petition, briefings, exhibits, and relevant law, the Court finds that the Petition is well-taken, and therefore, is **GRANTED**. Respondents' Motion is **DENIED**.

### BACKGROUND

Petitioner Juan Lamas Aguilar is a 28-year-old resident of New Mexico. **Doc. 1 ¶ 1**. In 2008, when he was 12 years old, Petitioner was sent to the United States. *Id.* **¶¶ 48–49**. Since then, he has remained in New Mexico and now has familial and community ties to Albuquerque. *Id.* **¶¶ 49, 61**. He is engaged to his fiancé, a U.S. citizen, and they have a one-year-old child

together.  *Id.* ¶¶ **48, 54–55**.  Since he was old enough to work, Petitioner has been employed, most recently by a company as a refrigerator repair person for the last four years.  *Id.* ¶ **58**.

On June 10, 2025, Petitioner went to a parole and probation office in compliance with a recent misdemeanor conviction, previously his only arrest, for driving while intoxicated.  **Doc. 1 ¶¶ 50, 60; Doc. 18 at 2**.  There, he encountered U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement Division ("ICE") officers, who arrested him.  **Doc. 1 ¶ 50; Doc. 18 at 2**.  Petitioner was charged with entering the United States without admission or inspection under 8 U.S.C. § 1182(a)(6)(A)(i), and DHS initiated removal proceedings in immigration court.  **Doc. 1 ¶ 52**.

Since then, Petitioner has remained in federal immigration custody without an opportunity to post bond or request conditional release because his detention has been classified as mandatory under 8 U.S.C. § 1225(b)(2)(A).  **Doc. 1 ¶¶ 2, 4, 62**. Petitioner is detained at the Torrance County Detention Center in New Mexico.  *Id.* ¶ **14**.

On December 12, 2025, an immigration judge ("IJ") held Petitioner's final immigration hearing and ordered his removal.  **Doc. 21 at 1**.  On January 5, 2026, Petitioner's counsel informed the Court that Petitioner had appealed the removal order on December 30, 2025.  **Doc. 25**.

Pursuant to 28 U.S.C. § 2241(c)(3), Petitioner requests that the Court release him from custody or order a bond hearing, in accordance with 8 U.S.C. § 1226(a), to be conducted within seven days.  **Doc. 1 ¶ 13**.  Additionally, he requests that the Court award attorney's costs and fees under the Equal Access to Justice Act ("EAJA").  *Id.*

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S.

Const., art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. Section 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges by noncitizens in immigration-related matters. *See Ochieng v. Mukasey*, 520 F.3d 1110, 1115 (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003)).

## DISCUSSION

This matter arises from Petitioner's mandatory detention without a bond hearing, pursuant to 8 U.S.C. § 1225(b)(2)(A). Petitioner's detention follows a 2025 DHS policy that requires immigration judges to consider any noncitizen charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) to be an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A) and ineligible for a bond hearing. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (BIA Sep. 5, 2025).

Petitioner contends that the recently announced policy is contrary to the plain language of §§ 1225(b)(2)(A) and 1226(a), which prescribe different detention procedures for noncitizens "seeking admission to" the United States and noncitizens who are "apprehended and detained" while present in the United States. **Doc. 1 ¶ 6–8**. Since he was a longtime resident not seeking admission at the time of his arrest, Petitioner argues that his detention is pursuant to § 1226(a), which allows for the release of noncitizens on bond or conditional parole. *Id.* ¶ 9. To that end, Petitioner seeks habeas relief because his mandatory detention violates the Immigration and Nationality Act ("INA"), INA bond regulations, and his Fifth Amendment right to due process. *Id.* **at 17**.

In their Motion, Respondents request that the Court dismiss the Petition because the Court lacks subject-matter jurisdiction over the Petition and mandatory detention is proper under § 1225(b)(2)(A). **Doc. 11 at 10–11**. The parties agree that the Petition may be decided from the Petition and Motion's briefing. **Doc. 15 at 7–8; Doc. 18 at 2**.

For the reasons discussed below, the Court declines to accept Respondents' statutory interpretation of §§ 1225 and 1226. The Court finds that (1) it has jurisdiction over the Petition until the removal order becomes final, (2) Petitioner is entitled to an individualized bond hearing pursuant to § 1226, and (3) Petitioner may pursue attorney's costs and fees under the EAJA.

I. **Jurisdiction of the Court.**

As an initial matter, the Court has jurisdiction over the Petition. Here, Petitioner argues that he is challenging "the legality of his mandatory detention without a bond hearing," not a removal order. **Doc. 15 at 4**. Therefore, according to Plaintiff, the relevant jurisdictional-stripping statutes do not prevent the Court from ruling on the Petition. *Id.* The Court agrees with Petitioner and concludes that it has jurisdiction over this matter.[1]

A. **The Court has subject matter jurisdiction because Petitioner is challenging his mandatory detention without a bond hearing, not the order of removal.**

A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. Section 2241(c)(3). "[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Demore*, 538 U.S. at 517. To preclude habeas review, Congress must be "particularly

---

[1] In their Reply, Respondents withdrew their subject-matter jurisdiction argument as it relates to 1225(b) removal orders. **Doc. 18 at 2**. The Court agrees that the jurisdictional issue does not apply to the Petition. Thus, the Court will not address Part II of Respondents' argument. *See* **Doc. 11 at 11–12**.

4

clear" in its intent to do so. *Id.* Under the INA, Congress included provisions preventing district courts from reviewing certain immigration-related matters. Relevant here is 8 U.S.C. § 1252(b)(9), known as a "zipper" clause. *See Jennings*, 583 U.S. at 316 (Thomas, J., concurring). For the reasons below, the provision does not prevent habeas review of the Petition.

Section 1252(b)(9) states that "judicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." It further prevents habeas corpus jurisdiction "to review such an order or such questions of law or fact" unless otherwise provided. Section 1252(b)(9).

Here, Petitioner is challenging his mandatory detention, not the removal order. The Tenth Circuit has previously determined a habeas corpus proceeding was the appropriate avenue for a petitioner a challenge to mandatory detention under § 1226(c). *Ochieng*, 520 F.3d at 1115 (citing *Demore*, 538 U.S. at 517). The petitioner was not precluded by § 1252(b)(9) because a challenge to mandatory detention was distinct from an order of removal. *Id.*; *see also* 8 C.F.R. § 1003.19(d) (2025) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond . . . shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding."). Further, the Supreme Court has rejected a broad interpretation of § 1252(b)(9) that would expand "arising from any action taken" to include the mandatory detention of noncitizens during removal proceedings. *Jennings*, 583 U.S. 281, 293 (2018) (determining that interpreting § 1252(b)(9) to apply to any injury that would not have occurred but for a noncitizen's detention status would lead to "absurd" results); *see also Mukantagara v. U.S. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023) ("A claim

only arises from a removal proceeding when the parties in fact are challenging removal proceedings.").

Accordingly, the Court finds that § 1252(b)(9) does not strip the Court of jurisdiction to consider the Petition.[2]

### B.    The Court retains jurisdiction until Petitioner's "final" removal order.

On December 12, 2025, an IJ issued an order of removal. **Doc. 21**. On January 5, 2026, Petitioner's counsel informed the Court that Petitioner appealed the removal order on December 30, 2025, and was unable to request a bond hearing at that time. **Doc. 25**. Because Petitioner's appeal is pending, Petitioner's challenge to his mandatory detention under § 1225 is not moot.

Sections 1225 and 1226 govern the detention of noncitizens during removal proceedings. *See Jennings*, 583 at 289 (stating that the INA authorizes detention "pending the outcome of removal proceedings under §§ 1226(a) and (c)."). Section 1231 governs the detention of noncitizens "during" and "beyond" the "removal period." 8 U.S.C. § 1231(a)(2)–(6). Generally, when a noncitizen is "ordered removed, the Attorney General shall remove [him] within 90 days." Section 1231(a)(1)(A). This is known as the "removal period." *Id.* The "removal period" begins once a noncitizen's removal order "becomes administratively final," § 1231(a)(1)(B), meaning that the order has been affirmed by the BIA or the time to seek review has expired, 8 U.S.C. § 1101(a)(47)(B); *see also Riley v. Bondi*, 606 U.S. 259, 267 (2025).

---

[2] The Court further finds that § 1252(g) does not bar this action. The Supreme Court requires § 1252(g) be read narrowly and applied to just "the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999). Petitioner asks the Court to answer a legal question: whether he is subject to mandatory detention under § 1225(b)(2)(A) or discretionary detention under § 1226(a). He does not ask the Court to second-guess Respondents' discretionary decision to commence removal proceedings against him. Section 1252(g) does not bar this action.

6

Since Petitioner filed an appeal within 30 days of the order of removal, the Court finds that § 1231 does not yet apply to Petitioner. Until his appeal is final, the authority governing his detention will not shift to § 1231. Therefore, this matter is not moot; the Court retains jurisdiction to rule on Petitioner's challenge to his mandatory detention under § 1225(b)(2)(A).

For the above reasons, the Court has subject-matter jurisdiction over this matter.

II. **Petitioner is entitled to an individualized bond hearing pursuant to § 1226(a).**

Turning to the merits of the Petition, at issue here is whether Petitioner is a noncitizen detained under § 1225 or § 1226. According to Respondents, Congress intended the term "applicant for admission" to be defined broadly to include all noncitizens "present in the United States who have not been admitted." **Doc. 11 at 10–11**. To that end, Petitioner is properly detained under § 1225 pursuant to *Hurtado*. *Id.* Petitioner disagrees, arguing that his detention under § 1225(b)(2)(A) contradicts the plain text of the INA and existing precedent. **Doc. 15 at 6–7**. Rather, his case is governed by § 1226(a). *Id.* The Court agrees with Petitioner's interpretation.

A. **Section 1226(a) governs the detention of presently residing noncitizens who are not seeking admission to the United States.**

First, the Court considers whether § 1225 or § 1226 applies to noncitizens who are arrested and detained while already present in the United States.

As an initial matter, the Court notes that *Hurtado* is not binding on the Court. The agency's interpretation carries only the "power to persuade." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Thus, the Court begins its analysis with the plain text and structure of the INA. *See Ceco Concrete Constr., LLC v. Centennial State Carpenters Pension Trust*, 821 F.3d 1250, 1258 (10th Cir. 2016) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and

7

unambiguous meaning with regard to the particular dispute in the case." (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997))).

Under the INA, two statutes govern the detention of noncitizens pending a final order of removal: §§ 1225 and 1226. Looking first to § 1226, it provides for the arrest and detention of noncitizens during removal proceedings. Under § 1226(a), a noncitizen "may be arrested and detained" pending a removal decision. Unless a noncitizen "shall" be detained under § 1226(c), and pending such a decision, the Attorney General "may continue to detain" the noncitizen and "may release" the noncitizen on bond and conditions or conditional parole. Section 1226(a)(1)–(2), (c). Importantly, one reason for mandatory detention under § 1226(c) applies to a noncitizen who is (1) "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General" and (2) "charged with, is arrested for, is convicted of, admits having committed" certain criminal acts. Section 1226(c)(1)(E); § 1182(a)(6)(A)(i).

Next, as relevant here, under § 1225, "in the case of an alien *who is an applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under section 1229a of this title." Section 1225(b)(2)(A) (emphasis added). An "applicant for admission" is defined as "an alien present in the United States who has not been admitted or who arrives in the United States." Section 1225(a)(1). And the INA defines "admission" and "admitted" to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." Section 1101(a)(13)(A).

Based on a plain and natural reading of the provision, § 1225(b)(2)(A) requires that the "applicants for admission" be presently seeking lawful admission when they encounter an

8

immigration officer.  Respondents' argument, which focuses on the definition of "applicant for admission," ignores the phrase "seeking admission" in § 1225(b)(2)(A).  Even if the Court was to agree with Respondents' interpretation of "applicant for admission," a plain and natural reading of § 1225(b)(2)(A) limits the mandatory detention requirement to a subset of noncitizens seeking admission to the United States.  *Cf.* § 1225(a)(3) (distinguishing between noncitizens "who are applicants for admission *or* otherwise seeking admission" (emphasis added)).  Noncitizens who have been present in the country for more than a decade are no longer seeking admission—they are already living here.  Therefore, they are not "seeking admission."  There is no ambiguity as to § 1225(b)(2)(A)'s meaning in this respect.

Further, if the Court accepted Respondents' interpretation of § 1225, it would render portions of § 1226(c) superfluous.  Under "one of the most basic interpretive canons . . . [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation modified); *see also Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1274 (10th Cir. 2018).  Specifically, the Court looks to § 1226(c)(1)(E)'s detention requirement for inadmissible noncitizens who are implicated in a listed crime, including those "present in the United States without being admitted or paroled" under § 1182(a)(6)(A)(i).  If § 1225 includes all noncitizens "present in the United States who have not been admitted," Section 1226(c)(1)(E)(i) would be meaningless because those noncitizens would already be governed by § 1225(b)(2)(A).  Therefore, the Court rejects Respondents' interpretation of § 1225.

Accordingly, the Court declines to follow *Hurtado* and finds that § 1226(a)'s discretionary detention procedures apply to noncitizens already present in the United States.

This Court's decision is consistent with Supreme Court's interpretation of §§ 1225 and 1226 in *Jennings*. Although the Court did not contemplate the presence of residing noncitizens not seeking lawful entry in its analysis, it described the relationship between §§ 1225 and 1226. 583 U.S. at 287, 297. As relevant here, the Court noted that, "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289. The *Jenning* Court's description of the relationship between §§ 1225 and 1226 is consistent with the Court's conclusion.

Additionally, the Court is persuaded by a recent decision by the Seventh Circuit, which similarly found that the text of § 1225(b)(2)(A) limited mandatory detention to an "applicant for admission" who is "seeking admission." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *9 (7th Cir. Dec. 11, 2025). There, the Seventh Circuit further rejected the defendants' argument that "applicant for admission" had the same definition as "seeking admission." *Id.* Although the court recognized that the interpretation has "some superficial appeal," it concluded that Congress chose to not to include "seeking admission" within the definition of "applicant for admission." *Id.* Furthermore, interpreting the phrases as synonymous would "render 'seeking admission' superfluous," in violation of a basic canon of statutory construction. *Id.* (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)). Therefore, the Seventh Circuit was compelled to presume that the defendants' interpretation was incorrect. *Id.* Ultimately, the court concluded that the defendants were not likely to succeed on the merits of their argument that the arrested noncitizens were subject to mandatory detention under § 1225(b)(2)(A).

And finally, this Court notes that its conclusion is consistent with many other decisions within the Tenth Circuit and across the nationwide. *See, e.g.*, *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-CV-01031-KG-JFR, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) (finding that § 1226(a) governs long-term noncitizens already in the country); *Romero v. Hyde*, 795 F. Supp. 3d 271, 282–85 (D. Mass. 2025) (engaging in in-depth analysis of plain text and statutory scheme of §§ 1225 and 1226 to reach the same conclusion); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256–61 (W.D. Wash. 2025) (relying on further canons of statutory construction, like recent legislative history of § 1226(c), to reach the same conclusion).[3]

Based on the above discussion, § 1226(a), not § 1225(b)(2)(A), governs the detention of noncitizens already present in the United States who have not sought admission before their arrest and detention.

### B. Because Section 1226 governs Petitioner's detention, he must receive a bond hearing.

Next, the Court turns to whether Petitioner's detention is governed by § 1226(a), and therefore, is entitled to a bond hearing.

As a threshold matter, § 1226 does not bar the Court from reviewing the Petition. Under 8 U.S.C. § 1226(e), a court may not review an Attorney General's "discretionary judgment regarding the application of this section . . . . No court may set aside any action or decision by the Attorney

---

[3] To the extent that Petitioner asserts that *Maldonado Bautista v. Noem*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), is "significant" authority as he appears to be a member of the certified "Bond Eligible Class," see **Doc. 24**, the Court finds that *Maldonado Bautista* has no impact on this Court's habeas decision. Although the Court notes that Petitioner would be impacted by the court's declaratory relief, habeas relief would only be afforded to class members located within the boundaries of the Central District of California. *Id.* at *30 (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) for the proposition that habeas jurisdiction lies "in only one district: the district of confinement").

General under this section regarding the detention of any alien or the revocation or denial of bond or parole." Here, Petitioner is not challenging a discretionary judgment or decision—no decision as to bond or release has been made. Rather, he is challenging *Hurtado*'s conclusion that immigration judges do not have jurisdiction to set bond, resulting in his inability to request a bond hearing pursuant to § 1226(a). **Doc. 1 ¶¶ 5, 12**. Therefore, the Court has jurisdiction to consider the Petition. *See Demore*, 538 U.S. at 516–17 (holding that § 1226(e) did not deprive courts of habeas jurisdiction when petitioner challenged statutory framework that permitted his detention without bail).

Turning to the merits of the Petition, Petitioner was arrested while already present in the United States. At the time of his arrest, he had continually resided in the United States for more than 15 years, and he had not previously sought legal entry into the country. He was not seeking admission. Accordingly, his detention is governed by the discretionary detention procedures under § 1226(a) rather than by mandatory detention under § 1225(b)(2)(A).

Based on the above discussion, the Court will grant the Petition. Under § 1226(a), Petitioner is entitled to a prompt individualized bond hearing before a neutral immigration judge.[4] To that end, the Court determines that the appropriate remedy is for Petitioner to receive a bond hearing pursuant to § 1226(a) within seven days. *See Clayton v. Jones*, 700 F.3d 435, 443 (10th

---

[4] Because the Court will grant habeas relief on Count One, it need not address Petitioner's other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative."); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Scott v. Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim).

Cir. 2012) (citing *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) for the proposition that district courts have "broad discretion" to craft habeas relief "as law and justice require").

### III.     Petitioner may pursue attorney's costs and fees under the EAJA.

Finally, Petitioner requests that the Court award attorney's fees and costs under the EAJA. **Doc. 1 at 17**. Respondents do not address Petitioner's request for fees and costs. Considering recent Tenth Circuit precedent and the relevant procedure, the Court finds that it may consider Petitioner's request for attorney's fees and costs provided that Petitioner follows proper procedure.

The EAJA provides for the following procedure:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C.§ 2412(d)(1)(A). Finding that "'civil action' unambiguously refers to any legal action brought to enforce a private or civil right, or to redress a private wrong," the Tenth Circuit recently held that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1159, 1166 (10th Cir. 2025).

A fee award is required if (1) the petitioner prevails, (2) the respondents' position was not "substantially justified," and (3) there are no special circumstances rendering an award of fees unjust. *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting § 2412(d)(1)(A)). While fees are authorized, the EAJA requires that a petitioner, "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses," and an allegation demonstrating that "the position of the United States was not substantially justified." Section 2412(d)(1)(A), (B). Upon filing this application, the respondents must justify their position in any underlying proceedings and district court litigation. *See Hackett*, 475 F.3d at 1170.

13

Since the Court grants Petitioner's habeas relief, should Petitioner continue to pursue costs and fees, Petitioner is instructed to file an EAJA application following the appropriate procedure.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order. Respondents' Motion to Dismiss is **DENIED**.

Respondents are directed to conduct an individualized bond hearing in accordance with § 1226(a) for Petitioner before the immigration court within seven (7) days of this Order's entry. Respondents shall not deny Petitioner bond on the basis that § 1225(b)(2)(A) requires mandatory detention.

Further, the parties are **ORDERED** to file a Joint Status Report within fourteen (14) days of this Order's entry, confirming that Petitioner received a bond hearing.

                                                    _____/S/_____
                                                    KEA W. RIGGS
                                                    UNITED STATES DISTRICT JUDGE